UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CHI Y. LEUNG,

        Plaintiff,

        - against -

WING T. LAW, TZE N. CHAN,
LAI M. WONG CHAN, MEI C. LAW,
SU CHAN, PUI WONG and LINDA LEE NG,

        Defendants.
-------------------------------------------------------X
GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**
04-CV-0568 (NGG)

        The defendants in the above-captioned action have moved, pursuant to Rules 9(b) and

12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims filed against them under

the civil provision of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1964, with prejudice, and to dismiss plaintiff Chi Y. Leung's ("Leung") state law

claims, without prejudice, pursuant to Fed. R. Civ. P. 12(b)(1).  For the reasons set forth below,

Leung's RICO claims are dismissed with prejudice because Leung lacks standing to sue under 18

U.S.C. § 1964(c) and has failed to adequately plead that the defendants engaged in a pattern of

racketeering activities.  Leung's various state law claims are also dismissed without prejudice, as

this court declines to further exercise pendent jurisdiction over these allegations following the

dismissal of Leung's federal claims.

**I.    BACKGROUND**

        Leung and defendants Wing T. Law ("Law") and Tze N. Chan ("Chan") are longtime

business partners who formed SDJ Trading Inc. ("SDJ" or "SDJ Trading"), a New York

1

corporation specializing in the purchase and wholesale sale of meat, in or about 1988.  (Amend. Compl. ¶ 14.)  Law, Chan and Leung were and are president, secretary and treasurer of the corporation, respectively, and each hold a 1/3 share in the corporation.  (Id.)  Leung, Chan and Law subsequently formed a number of other for-profit corporations, organized under the laws of New York and New Jersey, to hold real property purchased with the profits of SDJ in which, with one exception, they also hold equal shares.  (Id. ¶¶ 19-25.)  The complaint also alleges that in 2001, Law and Chan formed a corporation called SDJ Trading (NY) Inc., an entity separate from SDJ, utilizing accrued profits from SDJ to do so.  (Id. ¶ 28.)

Leung alleges that beginning in about 2000, his erstwhile business partners, along with a number of employees of SDJ Trading and the corporation's outside accountant, formed a conspiracy to defraud Leung of his fair share of the profits of SDJ Trading and the other entities that he had formed with Law and Chan.  (Id. ¶¶ 30-31.)  Essentially, Leung alleges that the defendants "omitted substantial cash receipts from the corporate books and records of SDJ and its related corporate entities; failed to document transactions between SDJ and its related entities; failed to document related-party cash transfers; [and] failed to document substantial reimbursements for [defendants'] personal expenditures."  (Id. ¶ 37.)  Leung further alleges that in order to conceal this extensive misfeasance, the defendants made false statements, including by use of the interstate wires and mails, to law enforcement authorities, federal, state and local taxing authorities, and banking institutions, and then refused to permit him access to the books and records of SDJ or any other company in which he is a part-owner despite his position as SDJ's treasurer. (Id. ¶¶ 33-36.)

Thus frozen out of the financials of these corporations, Leung instituted a special

proceeding in New York Supreme Court, New York County in July 2002 seeking dissolution of SDJ and the related corporate entities. (Id. ¶ 38.) Leung alleges that his subsequent review of the books, records and filings produced by these corporate entities revealed the extent of the fraud that had been orchestrated and committed by the defendants. (Id. ¶ 40.) Seeking to recover his damages from this alleged fraud, Leung then filed the original complaint in the instant suit on February 10, 2004, in which he alleged that the defendants were liable under civil RICO for injuries caused by predicate acts of mail fraud, wire fraud and bank fraud, and also raised a number of pendent state law claims allegedly arising from this same fraudulent scheme. Leung then filed an amended complaint on June 16, 2004, in which he added additional money laundering allegations in support of his civil RICO claim. (Id. ¶ 73(d).) The defendants subsequently filed this joint motion to dismiss on September 14, 2004.

## II.    LEGAL STANDARDS

Motions to dismiss for subject matter jurisdiction under Rule 12(b)(1) are reviewed under the same standard as are motions to dismiss for failure to state a claim under Rule 12(b)(6). See Gambino v. Rubenfeld, 179 F. Supp.2d 62, 67 (E.D.N.Y. 2002) (citing Moore v. PaineWebber, Inc., 189 F.3d 165, 169 n.3 (2d Cir. 1999) and Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997)). In most cases, the court will consider a 12(b)(1) motion before ruling on any other motions to dismiss, since dismissal of an action for lack of subject matter jurisdiction will render all other defenses and motions moot. See United States ex rel Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993); see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n, 896 F.2d 674, 678 (2d Cir. 1990). However, here, the RICO claims that provide the sole basis for Leung's claim that this court may exercise

subject matter jurisdiction over the claims in his amended complaint are the subject of a 12(b)(6) motion, and the defendants' 12(b)(1) motion is entirely contingent upon the success of its assertion that the plaintiff's RICO claims are not properly before this court. In such a case, the district court must first resolve the 12(b)(6) motion before turning to the 12(b)(1) motion. Casio Computer Co, Ltd. v. Sayo, No. 98 Civ. 3772, 1999 U.S. Dist. LEXIS 14675, at *30 (S.D.N.Y. Sept. 20, 1999) (Report and Recommendation of Ellis, M. J.) (adopted in full Casio Computer Co, Ltd. v. Sayo, No. 98 Civ. 3772, 2000 U.S. Dist. LEXIS 15411 (S.D.N.Y. Oct. 13, 2000) (Knapp, J.)).

In reviewing a motion to dismiss brought under either Rule 12(b)(1) or 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999). The complaint may be dismissed only if "it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hoover v. Ronwin, 466 U.S. 558, 587 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). In deciding such a motion, the "issue is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996) (internal quotations omitted).

Plaintiffs such as Leung who raise claims involving allegations of fraud must also satisfy the stringent pleading burden set forth in Fed. R. Civ. P. 9(b), which demands that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement governs civil RICO complaints alleging predicate acts of

4

mail fraud, wire fraud and bank fraud.  <u>Morrow v. Black</u>, 742 F. Supp. 1199, 1203 (E.D.N.Y. 1990) (discussing pleading requirements for predicate acts of mail fraud and wire fraud); <u>Bank of Vermont v. Lyndonville Sav. Bank & Trust Co.</u>, 906 F. Supp. 221, 227 (E.D.N.Y. 1995) (bank fraud).  In order to satisfy the particularity standard set forth in Rule 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  <u>Anatian v. Coutts Bank (Switz.) Ltd.</u>, 193 F.3d 85, 88 (2d Cir. 1999) (citations omitted).  Allegations of fraud which fail to conform to this standard must be dismissed.  <u>Id.</u> at 88-89.  However, plaintiffs whose "complaints [are] dismissed under Rule 9(b) are almost always granted leave to amend unless plaintiffs have already had one opportunity to plead fraud with greater specificity."  <u>Bank of Vermont</u>, 906 F. Supp. at 228 (quotation marks omitted).

In addition, the courts of this Circuit have frequently noted that alleged RICO violations "must be reviewed with appreciation of the extreme sanctions it provides, so that actions traditionally brought in state courts do not gain access to treble damages and attorneys fees in federal court simply because they are cast in terms of RICO violations."  <u>Mathon v. Marine Midland Bank, N.A.</u>, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995); <u>see also</u> <u>Schmidt v. Fleet Bank</u>, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("[Civil RICO] is an unusually potent weapon--the litigation equivalent of a thermonuclear device . . . courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.").

**III.** **DISCUSSION**

    A.    <u>RICO Allegations</u>

A plaintiff asserting a civil RICO claim must allege that he was injured in his business or property because of a defendant's acts in violation of any of the provisions of 18 U.S.C. § 1962. <u>See</u> 18 U.S.C. § 1964(c). The Supreme Court has interpreted the injury clause of this statute as limiting standing to plaintiffs whose injuries were caused proximately by the RICO predicate acts. <u>Holmes v. SEC Investor Prot. Corp.</u>, 503 U.S. 258, 268 (1992). In order to assert a viable claim that a defendant has violated the provisions of 18 U.S.C. § 1962, a plaintiff must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. <u>Sedima v. Imrex Co.</u>, 473 U.S. 479, 496 (1985). Here, the defendants assert that Leung's RICO claims should be dismissed because Leung has not sufficiently pled any of the predicate acts which he alleges, because the alleged predicate acts do not constitute a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5) in any event, and because Leung does not have standing to sue under the civil RICO statute. Specifically, the defendants contend that: (1) the mail fraud, wire fraud and bank fraud allegations lodged against them are not pled sufficiently to meet the particularity requirement of Rule 9(b); (2) the uses of the wires and mails were not done "in furtherance" of the alleged scheme; (3) the intent element of the bank fraud statute is not adequately pled; (4) Leung has failed to identify the financial transactions that he asserts constitute money laundering; (5) Leung does not have standing to bring a claim under 18 U.S.C. § 1962(a) because he does not allege that he has been injured by the defendants' investment of racketeering income; (6) even if Leung has properly pled a RICO violation, he does not have standing to sue because he has not properly alleged that these purported RICO violations were

the proximate cause of any injury to his business or property; (7) because Leung's claims under §§ 1962(a) and (c) fail, his RICO conspiracy claim under § 1962(d) must also be dismissed; and finally that (8) in any event, the RICO allegations in the amended complaint form neither an open-ended nor a closed-ended continuity, and therefore do not constitute a "pattern of racketeering activities" within the meaning of 18 U.S.C. § 1962. I address these arguments below.

1. *Rule 9(b) Pleading—Mail Fraud, Wire Fraud and Bank Fraud*

As noted above, in order to meet the particularity requirement set forth in Rule 9(b), a plaintiff alleging that he was injured by a defendant's fraudulent acts must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Anatian, 193 F.3d at 88. Each of Leung's wire fraud and bank fraud allegations fail the first part of this standard because the plaintiff's amended complaint does not identify the specific statements within the identified documents and representations which are alleged to be fraudulent. All but one of Leung's mail fraud allegations fail for the same reason.

a. Mail Fraud and Wire Fraud

With respect to his wire and mail fraud allegations, Leung asserts that "[t]he false 'mailings' or use of 'wires' are detailed in paragraphs 42, 52, 53, 54, 57, 78 [and] 79." (Pl. Br. at 12.) These paragraphs "detail" the alleged misstatements in only the most general terms, and thus largely fail to meet the pleading burden established by Rule 9(b). Paragraph 42 alleges that Leung was subjected to "misrepresentations of the financials of SDJ Trading Inc. . . . which substantially understated the net worth of SDJ." Paragraphs 52 and 53 allege that the defendants

mailed corporate income tax returns for SDJ Trading to the IRS during 2002 "which contained false financial information designed to substantially under report SDJ's profit." Paragraph 54 similarly alleges that the defendants mailed ten other federal state and local tax returns during 2002 "which contained false financial information." Paragraph 57 likewise alleges that Leung was provided with a statement regarding SDJ Trading's financials in August 2002 which "contained false information designed to deceive plaintiff . . . by understating profits for the year 2001." Paragraph 78 then asserts that the tax documents listed in Paragraph 54 were mailed or otherwise transmitted in interstate commerce. Finally, Paragraph 79 asserts, ostensibly in support of Leung's bank fraud allegations rather than his wire or mail fraud claims, that the defendants "provided false financial statements to the Bank of Asia Limited to obtain [a] 3.5 million dollar line of credit."

None of these paragraphs identifies specific statements which are alleged to have been fraudulent. Rather, they name whole documents, each of which encompasses numerous discrete statements, and allege, in vague and sweeping language, that each of these documents contained one or more false statements. These blanket accusations are clearly insufficient to meet the particularity requirement of Rule 9(b). See, e.g., Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the . . . specific content of the false representations."); Tavakoli-Azar v. Crescent Mgmt., Inc., No. 97 Civ. 0696, 1999 U.S. Dist. LEXIS 17944, at *7 (S.D.N.Y. Nov. 18, 1999) (in order to satisfy particularity requirement, plaintiff must identify "precisely what statements were made in what documents or oral representations or what omissions were made."); Greenes v. Empire Blue Cross & Blue Shield, No. 92 Civ. 8599, 1996 U.S. Dist. LEXIS

16469, at \*14 (S.D.N.Y. Nov. 4, 1996) (wire and mail fraud allegations dismissed where they failed, *inter alia*, to "indicate precisely what statement or omissions were made in what documents and the manner in which they misled plaintiffs.") Standing alone, therefore, the allegations in these paragraphs do not state Leung's claims with sufficient particularity.

However, in Paragraph 40 of the complaint, Leung does detail the allegedly fraudulent statement contained in SDJ's 2001 Federal Income Tax return, claiming that while SDJ had an actual gross sales income of $97,562,418 for tax year 2001, the defendants fraudulently reported gross sales in the amount of $95,062,418, thus understating the corporation's gross income by $2.5 million. Reading the complaint as a whole, therefore, Leung's allegation that the defendants mailed a fraudulent 2001 tax return for SDJ is pled adequately with respect to its specificity. Yet the specificity of this lone allegation cannot be imputed to Leung's other claims that the defendants made false statements in other tax returns filed for other tax years and/or on behalf of other corporations. Therefore, the allegation contained in paragraph 53 is the only mail fraud claim sufficiently pled to survive the particularity crucible of Rule 9(b).

Leung's wire fraud allegations, outlined in Paragraphs 33, 78 and 86 of the Amended Complaint, also are inadequate. Paragraph 33 alleges that "[i]t was further part of the conspiracy and scheme to defraud and steal that defendants LAW [and] CHAN would communicate information gathered or communicated by the other defendants by interstate telephone calls, between SDJ and SDJ, NJ and by mail and other instrumentalities in interstate commerce (i.e. faxes between SDJ and LINDA NG.)." Paragraph 78 alleges that the purportedly fraudulent documents listed in Paragraph 54 traveled via either the interstate wires or the mails. Finally, Paragraph 86 asserts that the defendants "for the purposes of executing the scheme to defraud

9

and to steal from plaintiff, and in furtherance of the criminal acts set forth herein, transmitted or caused to be transmitted communications by means of wire, without limitation, telephone calls and faxes among and between defendants."

These allegations do not provide any details of the individual communications that Leung believes were fraudulent. The defendants are not apprised of who the alleged speaker of any fraudulent communication was, or of the substance that is alleged to have been fraudulent. Such vague allegations are clearly insufficient to meet the particularity requirement of Rule 9(b). Accordingly, Leung's wire fraud allegations are dismissed.

        b.      Bank Fraud

Leung's bank fraud claim is premised on the allegation that the defendants also understated the income of SDJ in submissions made to Bank of Asia in connection with an application for a $3.5 million line of credit. This claim is also inadequately pled under Rule 9(b). Leung repeatedly alleges that the defendants "provided false financial statements," "false information" and "false financial reports" to the Bank of Asia, thus "misrepresenting" SDJ's financial condition by "substantially understat[ing] the net worth" of the corporation. (See Amend. Compl. ¶¶ 57, 59, 79-82, 85, 94.) However, since Leung nowhere identifies the precise statements that he alleges were made fraudulently to Bank of Asia, Rule 9(b) demands that this allegation be dismissed.

        2.      *The "In Furtherance Requirement"—Mail Fraud and Wire Fraud*

The defendants next propose that even if Leung's mail and wire fraud allegations are adequately pled in terms of Rule 9(b), they must be dismissed because the identified mailings and wire transmissions were not made in furtherance of the purportedly fraudulent scheme, as 18

U.S.C. §§ 1341 and 1343 require. Leung has alleged adequately that the defendants used the mails in furtherance of their scheme to defraud him. However, Leung's conclusory allegations that the defendants must have used the wires to communicate across state lines would fail this test even if they were pled adequately under Rule 9(b).

"A complaint alleging mail and wire fraud must show (1) the existence of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996). "The use of the mails need not be essential to the fraudulent scheme as long as the mailing is incident to an essential part of the scheme." Zigman v. Giacobbe, 944 F. Supp. 147, 153 (E.D.N.Y. 1996) (citing Pereira v. United States, 347 U.S. 1, 8 (1954)). In this case, Leung alleges that the use of the mails to deliver the falsified tax returns to the various taxing authorities was, at minimum, incident to an essential part of the scheme—namely, aligning the tax filings of the various corporate entities with the defendants' other representations concerning SDJ's income in order to "maintain[] a harmonious relationship with plaintiff so that plaintiff would not resort to a civil action which would have revealed the fraud and ongoing scheme." (Pl. Br. at 12.) The defendants counter that the identified mailings, even if fraudulent, "were [a] mere reflection of the past looting" and as such, were unrelated to the alleged scheme. (Def. Br. at 10.)

It is firmly established that "mailings which are designed to lull the victim into a false sense of security, postpone inquiries, or complaints, or make the transaction less suspect are mailings in furtherance of the scheme." United States v. Angelilli, 660 F.2d 23, 37 (2d Cir. 1981) (emphasis added). See also Schmuck v. United States, 489 U.S. 705, 711-14 (1989)

11

(concluding that mailings designed to preserve "[defendant's] relationship of trust and goodwill with the retail dealers upon whose unwitting cooperation his scheme depended" fall within the ambit of the mail fraud statute). It is therefore clear that if it appears from the face of Leung's complaint that the alleged falsifications of the tax statements were made by the defendants, and subsequently mailed, with an eye toward keeping Leung from discovering the defendants' fraudulent scheme, then the "in furtherance" element of the mail fraud statute is present. Leung has alleged that the tax returns were falsified and submitted in significant part to deceive him. (Amend. Compl. ¶¶ 52, 53, 55.) This element of the mail fraud statute is therefore satisfied by Leung's complaint.[1] The lone mail fraud allegation that was pled sufficiently to meet the strictures of Rule 9(b) therefore also survives the "in furtherance" test.

However, Leung's wire fraud allegations do not allege adequately that the defendants utilized the interstate wires in furtherance of the alleged scheme to defraud. It is not enough to allege, as Leung has done here, that because the defendants worked in different locales in New

---

[1] Leung's allegation that the tax returns were falsified in order to deceive him appears to be contradicted by another factual allegation in Leung's complaint—namely, the claim that the defendants refused to allow Leung to access the books and records of any of the relevant corporations from January 2001 until some point after July 2002, when Leung initiated a proceeding seeking to dissolve SDJ and its related corporate entities in state court, and thereby obtained access to some of the records of the corporations. (Amend. Compl. ¶¶ 36, 38, 39.) In ordinary parlance, tax statements are considered to be among the "books and records" of a business entity. Leung therefore appears, rather illogically, to be alleging both that the defendants prepared falsified tax statements with the intention of deceiving him and that the defendants tried to prevent him from seeing these same tax records. However, these elements of the complaint can be read in ways that resolve this apparent contradiction (e.g., that the defendants believed Leung could access the tax accounts of the corporations in which he was an officer by contacting the taxing authorities directly, or otherwise had limited access to tax-related documents despite the defendants' efforts to constrict his access to the financial records of the corporations). Moreover, Fed. R. Civ. P. 8(e)(2) explicitly permits parties to set forth alternative claims for relief. It therefore would be inappropriate to dismiss Leung's remaining mail fraud allegation on the basis of this apparent contradiction.

York and New Jersey, "[o]f necessity, defendants had to use the mails, wires, telephones, etc. to communicate with each other; transmit documents to each other and conspire with each other." (Pl. Br. at 11-12.)  Rather, the plaintiff bears the burden of pleading that particular uses of the wires by the defendants were incident to an essential element of the scheme to defraud.  See Zigman, 944 F. Supp. at 153.  This requirement places the onus on the plaintiff to describe the information that was transmitted or discussed via the wires so that the court can assess whether the identified communication was sufficiently related to the alleged scheme.  The bare allegation that the defendants communicated with each other over the interstate wires during the time period in which they were operating a scheme to defraud is clearly insufficient to carry this burden.  Accordingly, Leung's wire fraud allegations are dismissed.

3.    *Bank Fraud*

The defendants next contend that Leung's bank fraud allegations do not constitute a predicate act because the intent element of the bank fraud statute has not been met by the amended complaint, in which "there is no explanation as to how Defendants could have exposed the bank to loss by underberstating the value of collateral in obtaining a loan." (Def. Br. at 11.) (emphasis in original)  I agree.

Leung's claim is that the defendants committed a fraud on the Bank of Asia by understating SDJ Trading's net worth in connection with their application for a line of credit for the corporation.  (Amend. Compl. ¶ 42.)  The defendants allegedly secured a $3.5 million line of credit by providing financial documentation that included these misstatements.  (Id.)  In order to maintain a bank fraud claim, a plaintiff must allege that a defendant "(1) engaged in a course of conduct designed to deceive a federally chartered or insured financial institution into releasing

property; and (2) possessed an intent to victimize the institution by exposing it to actual or potential loss."  United States v. Crisci, 273 F.3d 235, 239-40 (2d Cir. 2001) (citation and quotation marks omitted).

The facts alleged by Leung support neither the inference that the defendants' course of conduct was designed to deceive Bank of Asia into releasing property nor the inference that the defendants possessed the requisite intent to victimize Bank of Asia.  "[I]n assessing fraudulent intent, it must be assumed that the defendant is acting in his or her informed economic self-interest."  Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1130 (2d Cir. 1994).  Courts therefore scrutinize allegations of fraudulent behavior to determine whether the alleged scheme "defies economic reason;" if so, the underlying fraud charges must be dismissed.  Atlantic Gypsum Co. v. Lloyds Int'l Corp., 753 F. Supp. 505, 514 (S.D.N.Y. 1990) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 595 (1986)).

Here, the alleged bank fraud scheme defies economic reason because the course of conduct attributed to the defendants in the amended complaint—understating the assets of the corporation seeking a line of credit from a commercial lender—could not have been rationally designed to deceive the lender into releasing property.  As any rational credit-seeker would understand, understating the assets available to back a requested loan would lead a lender to alter negatively its risk assessment of the proposed loan.  The lending institution might therefore offer the loan at a higher rate of interest, reduce the amount of credit it was willing to extend, demand increased security for the loan, or decline altogether to extend a loan to the applicant.  However, it is utterly implausible that a rational credit-seeker would understate its assets in order to coax the lending institution into releasing property, as the rational credit-seeker would understand that

14

downgrading its own creditworthiness would tend to prompt the lending institution to extend less credit, not more credit, to the potential borrower. I therefore conclude that the defendants' course of conduct was not one <u>designed</u> to deceive Bank of Asia into releasing property, and as such is not punishable under the bank fraud statute.

Leung's imaginative proposal that the defendants exposed Bank of Asia to potential loss by understating the borrower corporation's assets only serves to underscore the fundamental economic illogic of his argument. According to Leung, "[t]he defendants knew that they were evading taxes when they made the untrue representations to the Bank of Asia," (Pl. Br. at 15.) and "[h]ad the federal and state taxing authorities become aware of the income tax evasion, the corporations involved would have been liable for millions of dollars in back taxes fines and penalties. . . . Such consequences could easily have potentially caused the corporations to seek bankruptcy protection or suffer severe cash flow problems and loss of revenue from decreased sales." (<u>Id.</u> at 14.) Leung therefore argues that by concealing the tax evasion element of the fraudulent scheme from Bank of Asia, the defendants exposed the Bank of Asia to potential loss. (<u>Id.</u>) However, this potential for loss is predicated on the discovery of the defendants' alleged tax evasion by government authorities. Leung's theory of potential loss thus requires this court to accept the proposition that the defendants <u>intended</u> to victimize the Bank by exposing the Bank to a set of potential losses that would have become manifest only if the defendants' own misdeeds had been exposed. This theory does not make an ounce of sense. There are a number of fraudulent intentions that plausibly can be inferred from the allegation that the defendants intentionally understated the income and assets of the corporations they controlled to Leung and to state and federal tax authorities. However, defrauding Bank of Asia clearly is not among

them.  Leung's bank fraud allegations therefore are dismissed.

        4.     *Money Laundering*

Leung's claim that the defendants were engaged in the predicate act of money laundering is adequately pled.  A plaintiff seeking to maintain a money laundering claim must allege: "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact involved the proceeds of specified unlawful activity as defined in [18 U.S.C.] § 1956(c)(7); (3) that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and (4) that the defendant knew that the financial transaction was designed in whole or in part to conceal or disguise the source, ownership, control, etc., of those proceeds."  United States v. Maher, 108 F.3d 1513, 1527-28 (2d Cir. 1997).  Pleadings alleging money laundering are not subject to the stringent particularity requirement of Rule 9(b).  Berstein v. Misk, 948 F.Supp. 228, 236 n.2 (E.D.N.Y. 1997).  However, all of the essential elements of the crime must be alleged in the complaint.  Id.

Leung makes assertions concerning the defendants' alleged money laundering activities in three separate paragraphs of the amended complaint.  Leung first alleges that "it was further part of the conspiracy and scheme to defraud and to steal from plaintiff that defendants . . . have omitted substantial cash receipts believed to be in excess of 9.6 million dollars from the corporate books and records of SDJ and its related corporate entities; failed to document financial transactions between SDJ and its related entities; failed to document related-party cash transfers; failed to document substantial reimbursements for [defendants'] personal expenditures and failed to report cash transactions in excess of $10,000."  (Amend. Compl. ¶ 37)  Leung additionally alleges that "Law and Chan assisted by the other defendants purposely failed and

neglected to report cash transactions in excess of $10,000 as part of the scheme to defraud and steal from plaintiff and in furtherance of the criminal acts set forth herein," and that "each failure to report cash transactions in excess of $10,000 constitutes a separate offense of money laundering." (Amend. Compl. ¶¶ 83, 88.) From this, Leung concludes that "[t]he complaint establishes that defendants engaged in financial transactions; that the financial transactions involved proceeds of specified unlawful activity (i.e. mail and wire fraud activity); that they did so with the intent to violate Section 7201 of the internal revenue code; that they intended to disguise the nature and source of the cash and that they intended to evade federal currency reporting transactions." (Pl. Br. at 16.)[2]

The defendants counter that the money laundering allegations must be dismissed because Leung has failed to identify a single financial transaction that was designed to disguise the source, ownership or control of the property allegedly derived from the defendants' mail fraud scheme, or to "allege the required linkage between the funds obtained through the mail fraud" and the unreported cash transactions. The defendants' first contention is without support in the governing caselaw. The second is simply incorrect.

First, and as noted above, money laundering allegations need not be pled with any degree of heightened particularity. See Bernstein, 948 F.Supp. at 236 n.2. Therefore, Leung's money laundering allegation need only comply with the general pleading standard governing civil

---

[2] In the amended complaint, Leung charges that the defendants made unreported transactions in excess of $10,000. However, in his brief, Leung instead accuses the defendants of engaging in "structuring of cash deposits in banks by depositing under $10,000" in order to evade federal transaction reporting requirements, and nowhere repeats his earlier allegation that the unreported cash transactions involved sums greater than $10,000. While this shift is perplexing, it is the allegations set forth in the amended complaint that must be, and have been, assessed here.

actions in federal court.  This liberal requirement demands only that a plaintiff present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Such a complaint "need not state with precision all of the elements that are necessary to give rise to a legal basis for recovery as long as fair notice of the nature of the action is provided to the opposing party."  5 Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004).  Accordingly, the defendants' assertion that Leung must provide specifics as to the dates, amounts, payors or recipients of these alleged transactions in order for his money laundering allegations to survive the defendants' motion to dismiss is incorrect.  The allegations contained in Paragraphs 37, 83, 88 and elsewhere adequately put the defendants on notice of Leung's claim that the defendants made (1) cash transactions; (2) involving the proceeds of the scheme to siphon money out of the corporations of which Leung was a part owner, a scheme that was furthered by the use of the mails; (3) with the knowledge that the transaction represented the proceeds of that scheme; and (4) with the further knowledge that these cash transactions, which involved sums in excess of $10,000 and were not disclosed to governmental authorities, were intended to disguise both the source and destination of the stolen money.

The defendants' second contention—that the amended complaint does not allege a linkage between the funds obtained through the mail fraud and the unreported cash transactions—can be more succinctly rebutted.  Read in the light most favorable to Leung, Leung's amended complaint asserts that the funds allegedly distributed through unreported cash transactions are the same as the funds which were siphoned out of SDJ by the defendants.  Leung's allegation that the defendants were engaged in the predicate act of money laundering is

therefore adequately pled under Rule 8(a)(2).

5.     *Leung Lacks Standing to Sue for Violations of 18 U.S.C. § 1962(a)*

Leung's allegation that the defendants violated 18 U.S.C. § 1962(a) must be dismissed because Leung does not have standing to sue under this provision.  Section 1962(a) provides: "It shall be unlawful for any person who has received income derived, directly or indirectly, from a pattern of racketeering activity . . . to invest, directly or indirectly, any part of such income, in the acquisition of any interest in, or the establishment of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."  18 U.S.C. § 1964(c) establishes a civil cause of action for recovery of injuries resulting "by reason of" a violation of this provision.  Thus, in order to state a cause of action for a violation of § 1962(a), a plaintiff must allege (1) that a defendant  received income from a pattern of racketeering activity; (2) invested that income in the acquisition of a stake in, or establishment of, an enterprise distinct from the one from which the income was derived; and (3) that the plaintiff suffered an injury flowing from this reinvestment of racketeering income distinct from any injury suffered because of the commission of the original predicate acts of racketeering activity.  See, e.g., Ouaknine v. MacFarlane, 897 F.2d 75, 83 (2d Cir. 1990) ("Because the conduct constituting a violation of § 1962(a) is investment of racketeering income, a plaintiff must allege injury from defendant's investment of the racketeering income to recover under § 1962(a)."); Falise v. American Tobacco Co., 94 F. Supp. 2d 316, 349 (E.D.N.Y. 2000) ("the plaintiff [must] allege a 'use or investment' injury that is distinct from the injuries resulting from [the racketeering] predicate acts. . .  Where reinvestment of racketeering proceeds back into the same RICO enterprise is alleged, the injuries stem proximately not from the investment, but from the predicate acts that make up the

racketeering activity.").

Leung's § 1962(a) claim fails because, even though his amended complaint can be construed as alleging that the defendants reinvested racketeering income on at least one occasion, he does not allege facts suggesting that he suffered an injury resulting from the reinvestment of this income. Leung devotes little attention to this cause of action in his amended complaint, and none whatsoever in his brief. Only three paragraphs of the amended complaint could be construed as addressing Leung's § 1962(a) allegation. The first alleges that several defendants "diverted income from SDJ Trading New Jersey for the purposes of purchasing an interest in or establishing 'SDJ Trading Philadelphia' a domestic for profit corporation formed under the laws of the State of Pennsylvania." (Amend. Compl. ¶ 60.) The second alleges that Law and Chan formed SDJ Trading (NY), Inc., apparently without Leung's knowledge or consent, using accrued profits from SDJ. (Id. ¶ 28.) The third submits that the defendants "used income estimated to exceed 9.6 million dollars derived from a pattern of racketeering activity in the operation of SDJ Trading, Inc. and its related entities to acquire interests in, or to establish or operate enterprises engaged in or whose activities affect interstate commerce." (Id. ¶ 95.)

None of these paragraphs explicitly alleges that the asserted reinvestment of the stolen funds caused a distinct injury to Leung. Nor does Leung's implicit suggestion that SDJ Trading Philadelphia may have provided a corporate destination for the stolen funds satisfy the injury element of the civil RICO statute, as it does not present an injury distinguishable from the original theft alleged by Leung. Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1063 (2d Cir. 1996). See also Vemco, Inc. v. Camardella, 23 F.3d 129, 133 (6th Cir. 1994) ("Nowhere in the amended complaint . . . did [plaintiff] allege an injury stemming from the investment, distinct

from injuries stemming from predicate acts . . . . Such allegations do not meet the . . . requirement of a distinct investment injury.") (quotation marks omitted). Accordingly, Leung's claim arising under § 1962(a) is dismissed because the injury element of that RICO provision has not been satisfied.

6.     *Leung Also Lacks Standing to Sue For Violations of §§ 1962(c) and (d)*

The defendants next contend that the plaintiff's remaining RICO claims must be dismissed because there is not a sufficient nexus between the injuries allegedly suffered by Leung and the asserted predicate acts to create standing for Leung to bring suit under 18 U.S.C. § 1964. This argument takes two forms, each of which is independently sufficient to require dismissal of Leung's RICO allegations. First, the defendants argue that the alleged predicate acts of mail fraud, wire fraud, bank fraud and money laundering were not the proximate cause of Leung's alleged injuries; rather, the defendant contends that it was the non-predicate acts of siphoning money out of SDJ which proximately caused Leung's losses. Second, the defendants assert that in any event, it was SDJ which was directly injured by the defendants' actions, not Leung. Accordingly, the defendants assert, Leung lacks standing to bring this suit as a RICO action because, as a shareholder of the corporation, his alleged injury is merely "derivative of the injury to the corporation." (Def. Br. at 22.) The defendants are correct on both counts.

a.     Proximate Causation

None of the defendants' purported racketeering activities has been adequately alleged to have been the proximate cause of Leung's injuries. "A plaintiff's standing to sue under RICO requires a showing that the defendant's violation not only was a but for cause of his injury, but was the proximate cause as well." <u>Laborers Local 17 Health & Benefit Fund v. Philip Morris,</u>

Inc., 191 F.3d 229, 234 (2d Cir. 1999) (quoting Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 269-70, 117 L. Ed. 2d 532, 112 S. Ct. 1311 (1992) (quotation marks omitted)). In determining whether this proximate cause requirement has been met in the RICO context, courts look, *inter alia,* to whether the complaint alleges that the plaintiff has suffered an injury flowing directly from the defendants' commission of the identified predicate acts. Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 23 (2d Cir. 1990). In this Circuit, RICO patterns or acts are deemed to "proximately cause a plaintiff's injury if they are a substantial factor in the sequence of responsible causation, and if the injury is reasonably foreseeable or anticipated as a natural consequence." Id. at 24. However, "[a]n act which proximately caused an injury is analytically distinct from one which furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act." Red Ball Interior Demolition Corp. v. Palmadessa, 874 F. Supp. 576, 584 (S.D.N.Y. 1995). Thus, a predicate act cannot be deemed to have proximately caused a plaintiff's injury, even if it was an integral part of the underlying criminal scheme, unless the plaintiff's original loss could not have occurred without the commission of the predicate act. See Moeller v. Zaccaria, 831 F. Supp. 1046, 1054 (S.D.N.Y. 1993) (finding that fraudulent representations made in interstate mail and telephone communications were not proximate cause where plaintiffs' injury might well have happened without the acts of mail and wire fraud).

For this reason, none of the predicate acts alleged by Leung could be construed as the proximate cause of his losses, which stem from the devaluation of his ownership share in SDJ and its related corporate entities through the defendants' allegedly unlawful acts. Leung's mail fraud claims charge that the defendants mailed fraudulent tax returns to various taxing authorities

to deceive Leung about the corporations' true financial performance. These mailings may have been necessary to the defendants' efforts to retain the property siphoned out of the corporations, but clearly were not an indispensable part of the theft itself. The same is true of the wire fraud allegations, which claim that the defendants transmitted corporate tax returns and/or communicated with one another about unknown subjects via the interstate wires. These allegations simply do not support the inference that the defendants' wire communications were necessary to the theft itself. Similarly, the amended complaint attributes no tangible loss whatsoever to the bank fraud allegations. And finally, the defendants' alleged failure to report cash transactions, the omission underlying Leung's money laundering claims, may have concealed, but did not cause, Leung's losses. This failure to allege sufficiently the proximate cause requirement of the RICO civil cause of action requires the dismissal of Leung's RICO claims in their entirety.

b.      Shareholder Standing

The defendants also assert that Leung lacks standing to bring this suit as a RICO action because, as a shareholder of the corporation, his alleged injury is "derivative of the injury to the corporation." (Def. Br. at 22.) As a general rule, "a shareholder . . . does not have standing to bring an individual action under RICO to redress injuries to the corporation in which he owns stock. This is true even when the plaintiff is the sole shareholder of the injured corporation. Since the shareholder's injury, like that of the creditor, generally is derivative of the injury to the corporation, the shareholder's injury is not related directly to the defendant's injurious conduct." Manson v. Stacescu, 11 F.3d 1127, 1131 (2d Cir. 1993) (citations omitted). However, the Second Circuit has recognized an exception to this general rule, allowing RICO suits to proceed

where plaintiffs have shown that they would have standing under general common law principles or applicable state law to bring a direct claim against the defendant. Ceribelli v. Elghanayan, 990 F.2d 62, 63 (2d Cir. 1993) (citing Bankers Trust Co. v. Rhoades, 859 F.2d 1096 (2d Cir. 1988), cert. denied, 490 U.S. 1007 (1989)). The Second Circuit subsequently determined that "[u]nder New York law, a shareholder may bring an individual suit if the defendant has violated an independent duty to the shareholder, whether or not the corporation may also bring an action." Id. at 63-64 (citing Abrams v. Donati, 489 N.E.2d 751 (N.Y. 1985) and Fifty States Management Corp. v. Niagara Permanent Savings and Loan Ass'n, 58 A.D.2d 177, 179 (N.Y. App. Div. 4th Dep't 1977)). This independent duty need not be a fiduciary duty. Id. at 64.

Here, Leung alleges that "Law and Chan as majority-controlling shareholders owed a fiduciary duty directly to the plaintiff as the sole minority shareholder" and appears to assert that this duty was violated by these defendants' refusal to "provide Leung with the accounting to which he was legally entitled." (Amend. Compl. ¶ 61-62.) However, this argument ignores the statutory requirement that the plaintiff's injuries derive from acts or omissions that fall within the definition of racketeering activity provided in 18 U.S.C. § 1961(1). See 18 U.S.C. § 1964(c) (limiting standing to persons injured by reason of a violation of 18 U.S.C. § 1962). See also Bankers Trust, 859 F.2d at 1100 ("[The language of § 1964(c)] contains no special limitation on standing; all that is required is that plaintiff suffer injury in fact . . . and that the injury be caused by defendants' RICO violation."). The defendants may have breached a duty that they owed to Leung by keeping him from reviewing the corporations' financials, but that behavior, standing alone, is not proscribed by any provision of § 1962. Leung does not argue that the defendants' alleged mail fraud or money laundering activities caused a breach of any duty independent of the

duties the defendants owed to the corporations.  Accordingly, the direct injuries incurred by the defendants' RICO predicate acts, if any, were suffered by persons or entities other than Leung, and Leung lacks standing to raise any of his various civil RICO claims.

### 7. *The RICO Pattern Requirement*

The foregoing discussion of Leung's mail fraud, wire fraud, bank fraud and money laundering allegations leaves only a single allegation of mail fraud and an indeterminate number of money laundering violations as the predicate acts upon which Leung's RICO claims rely.  In order to survive this motion to dismiss, Leung's remaining predicate acts must form a "pattern of racketeering activity."  That is, Leung's complaint must demonstrate that the defendants (1) committed at least two predicate acts of racketeering within ten years of one another, <u>see</u> 18 U.S.C. § 1961(5); (2) that these racketeering predicates are interrelated; and (3) that they reveal continued, or the threat of continued, racketeering activity.  <u>United States v. Diaz</u>, 176 F.3d 52, 93 (2d Cir. 1999).

The first two prongs of this standard are easily met.  All of Leung's claims are based on acts alleged to have occurred in 2000 or later, and, quite plainly, one mail fraud predicate act plus (at least) one predicate act of money laundering equals (at least) two predicate acts of racketeering.  Moreover, these racketeering predicates are closely related; Leung alleges that the money laundering predicate acts were designed to conceal the source and destination of the funds looted through the mail fraud scheme.

Assessing whether the third prong of the standard has been met requires more extensive discussion.  "To establish a RICO pattern it must also be shown that the predicates themselves amount to, or that they otherwise constitute a threat of, continuing racketeering activity."  <u>H.J.,</u>

Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 240 (1989). This continuity requirement may be satisfied by either an open-ended or closed-ended pattern of racketeering activities. Id. at 241. Here, the remaining RICO predicates constitute neither an open-ended nor closed-ended pattern, and the continuity requirement of the RICO statute therefore has not been met.

a.      Closed-Ended Continuity

Closed-ended continuity describes a finite, pre-litigation period of repeated conduct over a time period of substantial duration. Id. at 242. Predicate acts extending over only a few weeks or months do not satisfy the substantial duration element. Id. See also GICC Capital Corp. v. Technology Finance Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995) (collecting court of appeals cases and observing that a period of less than two years rarely will satisfy the substantial duration requirement); Metromedia v. Fugazy, 983 F.2d 350, 369 (2d Cir. 1992) (holding that a series of predicate acts extending over a two-year period constitutes a closed-ended pattern).

Leung argues that the predicate acts pled in the complaint constitute a closed-ended continuity because "plaintiff has been denied access to the books and records of the corporations controlled by [defendants] to the time of the filing of the complaint, a period of almost 3 ½ years. . . . Such a period constitutes a substantial period of time." (Pl. Br. at 18.) Leung's analysis is fundamentally flawed. In determining whether a plaintiff adequately has alleged a closed-ended continuity in support of the pattern element of the RICO statute, courts look only to the allegations of racketeering activity stated in the complaint and exclude allegations describing other illicit activity. See H.J., Inc., 492 U.S. at 242 ("in the RICO context, . . . what must be continuous [is] RICO's predicate acts or offenses"); DeFalco v. Bernas, 244 F.3d 286, 321 (2d Cir. 2001). Since the defendants' alleged actions in denying Leung access to the books and

26

records of the corporations cannot constitute racketeering activity, these actions also cannot be part of a pattern of racketeering activity, or lend duration to an otherwise insubstantial pattern.

Upon isolating the racketeering acts viably stated in the amended complaint, it is clear that these acts cannot be found to constitute a closed-ended pattern of racketeering activity because Leung has not alleged these predicate acts with sufficient specificity for this court to conclude that the defendants' activities were not isolated and sporadic. As set forth in Sections III.A.1-4, the only predicate acts which were pled adequately in the amended complaint are a single instance of mail fraud which occurred in September 2002 and an unspecified number of money laundering transactions that have taken place "from at least the year 2000." (Amend. Compl. ¶ 37.) Leung thus appears to allege that the money laundering transactions spanned the three-plus year period from 2000 to the initiation of the instant litigation. Accordingly, the substantial duration element of the pattern test is met. However, Leung's allegations nonetheless fail to satisfy the pattern requirement for a more basic reason: the amended complaint does not describe the frequency or duration of the defendants' alleged money laundering activities in enough detail for this court to determine whether this series of alleged predicate acts constitutes a pattern. Leung instead invites the court to fill in the blanks left by his thinly supported money laundering allegations, connect those allegations to a single act of mailing, and then declare those acts to constitute a pattern. This is not adequate for RICO pleading purposes. Rather, in order to survive a motion to dismiss, "a plaintiff must provide some basis for a court to conclude that [the] defendants' activities were 'neither isolated nor sporadic.'" GICC, 67 F.3d at 467 (quoting Beauford v. Helmsley, 865 F.2d 1386, 1391 (2d Cir. 1989)). A civil RICO plaintiff need not provide exacting detail of the dates and times at which the alleged predicate acts occurred at the

pleading stage. However, the bare assertion that predicate acts were committed by the defendants on one or more occasions during an approximately three-year period does not provide the court with any basis to conclude that the defendants' activities were not isolated or sporadic. Accordingly, Leung has failed to plead a closed-ended pattern of racketeering activities.

b.      Open-Ended Continuity

A plaintiff can also satisfy the continuity element of the RICO statute's pattern requirement by alleging that the defendants were engaged in an open-ended pattern of racketeering activities. Open-ended continuity describes "past conduct that by its nature projects into the future with a threat of repetition." H.J. Inc., 492 U.S. at 241. The Second Circuit has directed district courts to look first to the nature of the predicate acts alleged or to the nature of the enterprise at whose behest the predicate acts were performed in assessing whether a threat of continuity was presented by an open-ended series of predicate acts. See, e.g., GICC, 67 F.3d at 466; United States v. Aulicino, 44 F.3d 1102, 1111 (2d Cir. 1995); United States v. Kaplan, 886 F.2d 536, 542 (2d Cir. 1989). Thus, an inherently unlawful act performed on behalf of an enterprise whose business is racketeering activity would automatically give rise to the requisite threat of continuity. Aulicino, 44 F.3d at 1111. Similarly, where the defendants have engaged in acts which are inherently unlawful, such as murder and kidnaping, the threat of continuity is also deemed to be present. Id. at 1111, 1113. Where the nature of the conduct or the enterprise does not by itself suggest that the racketeering acts will continue, courts must look to other factors, such as the number of victims, the breadth of the scheme, and the defendants' "continuing intent and ability to participate in various ways in the corruption of the enterprise" in determining whether the defendants' activities posed a threat of continuity. Kaplan, 886 F.2d at 542-43.

However, a fraudulent scheme which targets a single business or person is deemed to be "inherently terminable," and thus incapable of presenting an open-ended threat of continuing criminal activity. GICC, 67 F.3d at 466. See also Efron v. Embassy Suites, 223 F.3d 12, 17-21 (1st Cir. 2000) (collecting cases).

Here, it is undisputed that the charged enterprises are businesses engaged in legitimate activities such as wholesale meat distribution and real estate holdings. The defendants are not alleged to be engaged in organized crime or to commit criminal acts on a regular basis. Instead Leung claims that the allegations in the amended complaint present a threat of ongoing criminal activity because the defendants' scheme targeted multiple victims and, because the defendants "still own and control the corporations to the exclusion of the plaintiff[,] they can and do dictate how the corporations operate, how income is accounted for and reported for tax purposes." (Pl. Br. at 19.) Leung further claims that the defendants' continued refusal to grant him free access to the books and records of the corporations indicates that the fraud is ongoing. (Id.) These assertions are insufficient to establish open-ended continuity.

First, Leung claims that the governments of United States, New York and New Jersey were also targets of the defendants' alleged money laundering and mail fraud activities because these governments were deprived of tax revenues from profits that the defendants failed to report. (Pl. Br. at 18.) However, this assertion hardly differentiates the instant allegations from the type of simple, single-victim scheme which does not present an open-ended continuity; only in the rarest of cases will a fraudulent scheme fail to produce or conceal taxable income which is not reported to various taxing authorities. The mere fact that federal and state authorities (as well as municipal governments, school districts, water districts, etc.) may thus be deprived of duly owed

tax revenue does not convert a single-victim, limited-purpose scheme into the type of ongoing threat to which Congress intended to extend RICO liability.

Thus, even if the defendants have continued to plunder Leung's share of the corporation, it is still the case that Leung is, according to his amended complaint, the sole direct target of a scheme whose limited purpose is to deprive a single shareholder of his rightful portion of the profits of an closed set of closely-held corporate entities. This allegation is simply insufficient to state a threat of open-ended continuity. I therefore conclude that Leung has failed to plead that the defendants engaged in a pattern of racketeering activities. Accordingly, Leung's RICO claims must be dismissed, even if he has standing to sue under 18 U.S.C. § 1964.

      B.    <u>State Law Claims</u>

Due to the foregoing dismissal of Leung's RICO claims, which provided the sole asserted basis for federal court jurisdiction in the amended complaint, I also dismiss Leung's state law claims, albeit without prejudice to replead in state court. It is axiomatic that "in the usual case in which all federal-law claims are eliminated before trial, that balance of factors to be considered . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Travelers Ins. Co. v. Keeling</u>, 996 F.2d 1485, 1490 (2d Cir. 1993) (quoting <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350, n.7 (1988)). <u>See also</u> 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–. . . the district court has dismissed all claims over which it has original jurisdiction.") Here Leung's federal claims have been dismissed at the pleading stage, although the parties have conducted some discovery under the supervision of Magistrate Judge Matsumoto. This case does not appear to present any circumstances that would require me to disturb the strong presumption that

pendent state law claims should be dismissed where the federal cause of action has been

dismissed in the preliminary rounds. Accordingly, I decline to exercise further jurisdiction over

Leung's remaining claims, all of which present issues of New York law.

**IV.    CONCLUSION**

In sum, Leung's RICO claims are dismissed with prejudice because Leung has failed in

two respects to satisfy the statutory requirement that he allege a direct injury flowing from the

defendants' RICO predicate acts, and because Leung has failed to allege a viable pattern of

racketeering activities. Accordingly, Leung is denied permission to replead the RICO allegations

that were pled insufficiently under Rule 9(b). I also dismiss Leung's state law claims without

prejudice, as the RICO claims were the only federal causes of action raised in the amended

complaint, and the parties to this action are not completely diverse. (See Amend. Compl. ¶¶ 4-

13.) This action is therefore dismissed in its entirety. The Clerk of the Court is directed to close

this case.


SO ORDERED.


Dated: May 30, 2005                          _____/s/_____
        Brooklyn, N.Y.                              Nicholas G. Garaufis
                                                    United States District Judge